In re Edward F. TAHAH, also known as Ed Tahah, and Eugenia Ann Tahah, also known as Ann Tahah, Debtors.

Kenneth C. McCoy, Appellant,

v.

John T. Hardeman, Trustee, Appellee.

BAP No. WO–04–067.
Bankruptcy No. 03–24022–NLJ.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Sept. 13, 2005.

---

Kenneth C. McCoy, pro se.

Before McFEELEY, Chief Judge, CLARK, and McNIFF, Bankruptcy Judges.

## OPINION

CLARK, Bankruptcy Judge.

Appellant Kenneth C. McCoy ("McCoy") appeals an Order of the United States Bankruptcy Court for the Western District of Oklahoma partially denying his request for attorney's fees in a dismissed Chapter 13 case. We REVERSE the bankruptcy court's Order, and REMAND for proceedings consistent with this Opinion.

## I. *Background*

On December 24, 2003, the Debtors filed a petition under Chapter 13 of the Bankruptcy Code ("2003 case"). McCoy was their attorney. The 2003 case was dismissed on April 21, 2004, prior to the confirmation of a Chapter 13 plan. On the following day, the Debtors again filed for Chapter 13 relief with McCoy as their attorney ("2004 case"). The bankruptcy court confirmed a plan in the 2004 case on May 27, 2004.

Both the 2003 case and the 2004 case were assigned to the same bankruptcy court judge, who has issued "Chapter 13 Guidelines." In the Guidelines, which were applicable during both of the Debtors' cases, the following relevant fees were "presumed to be reasonable": (1) $1,500 for pre-confirmation services rendered in a case where a Chapter 13 plan is confirmed; and (2) $800 for services rendered in cases dismissed or converted to Chapter 7 prior to the confirmation of a Chapter 13 plan. Chapter 13 Guidelines ¶ X.A.iii, X.B.i, X.D.i, in Appendix at 30, 31, 33. Because these fees are presumed to be reasonable, an itemized fee application is not necessary when a debtor's attorney seeks the presumptive fee. However, if an attorney requests fees in addition to the relevant presumptive fee, he or she must file an itemized fee application. Specifically, the Chapter 13 Guidelines provide:

> However, in cases where an attorney believes extraordinary circumstances justify an award of additional fees, the attorney may submit a written fee application together with attorney time records complying with the requirements set forth in *In re Seneca Oil Co.*, 65 B.R. 902 (Bankr.W.D.Okla.1986). Such application will be set for hearing by the

Court, and if granted, the manner of payment will be determined by the Court.

*Id.* ¶ X.A.iii, in Appendix at 30. The Chapter 13 Guidelines state that: "*All* requests for fees or compensation by Chapter 13 debtors' attorneys shall be approved by the Court." *Id.* ¶ X.A.iv (emphasis in the original), in Appendix at 30.

Under the Chapter 13 Guidelines, any fees up to $800 were presumed to be reasonable in the Debtors' 2003 case, because that case was dismissed prior to the confirmation of a Chapter 13 plan. McCoy claimed that he rendered services to the Debtors in the 2003 case that resulted in fees in excess of $800. Thus, in compliance with the Chapter 13 Guidelines, McCoy filed an Application for Allowance of Compensation under 11 U.S.C. § 330[1] in the 2003 case, seeking approval of fees in the amount of $2,027.00 (Application). His Application included itemized billing statements setting forth the services that he rendered in that case. The Chapter 13 Trustee objected to the Application, but later withdrew his objection and approved a proposed order allowing the fees in full.

On August 24, 2004, the bankruptcy court held a hearing on McCoy's Application. At the hearing, the bankruptcy court orally ruled that because McCoy had received attorney's fees of $1,440 in the 2004 case, it would only award a presumptive fee of $800 in the 2003 case, stating: "this is one of those cases that balances out." Transcript at 17, in Appendix at 58. No other factual findings were made.

On August 26, 2004, the bankruptcy court entered an order memorializing its oral ruling ("Fee Order"). In the Fee Order, the bankruptcy court held that

---

1. Unless otherwise stated, all future statutory references are to title 11 of the United States Code.

McCoy had failed to meet his burden of establishing the existence of "extraordinary circumstances" that would justify an award of fees in excess of the $800 presumptive fee. The court also made the following statement: "In addition, when examining the facts of this case in light of the requirements of § 330, the Court finds insufficient benefit to the estate to justify awarding fees in excess of $800." Fee Order at 5–6, in Appendix at 15–16.

This appeal of the Fee Order followed.

## II. *Appellate Jurisdiction and Standard of Review*

◼ We have jurisdiction over this appeal. The bankruptcy court's Fee Order is a "final" order under 28 U.S.C. § 158(a)(1). *See, e.g., Quackenbush v. Allstate Ins. Comr.,* 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). McCoy timely filed his Notice of Appeal from the Fee Order. Fed. R. Bankr.P. 8002(a). Finally, the parties have consented to this Court's jurisdiction because they have not elected to have the appeal heard by the United States District Court for the Western District of Oklahoma. 28 U.S.C. § 158(b)-(c); Fed. R. Bankr.P. 8001(e); 10th Cir. BAP L.R. 8001–1.

◼ The bankruptcy court's interpretation of § 330 is reviewed *de novo*. Its factual findings concerning compensation under § 330 are reviewed under a clearly erroneous standard. *See* Fed. R. Bankr.P. 8013. A decision to allow or disallow compensation under § 330 is reviewed for abuse of discretion. *In re Commercial Fin. Servs., Inc.,* 298 B.R. 733, 747 (10th Cir. BAP 2003) (quoting *In re Miniscribe Corp.,* 309 F.3d 1234, 1244 (10th Cir.2002)).

## III. *Discussion*

◼ An attorney representing the interests of a Chapter 13 debtor may apply for compensation under § 330(a)(4)(B) of the Bankruptcy Code. A court may award "reasonable compensation to the debtor's attorney ... based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section." 11 U.S.C. § 330(a)(4)(B). In determining "reasonable compensation," § 330(a)(3) states that the bankruptcy court "shall consider the nature, the extent, and the value of such services," taking into account the following five nonexclusive factors:

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time in which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A)-(E). Section 330(a)(4) further provides that certain services are not compensable. Specifically, a court may not allow compensation for the following:

(i) unnecessary duplication of services; or

(ii) services that were not-

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case.

11 U.S.C. § 330(a)(4)(A)(i)—(ii). It is well-established that bankruptcy courts have a duty to independently evaluate the propri-

ety of the compensation requested under § 330. *See, e.g.,* 3 Collier on Bankruptcy ¶ 330.04[4][c] (Lawrence P. King, ed., 15th ed. rev.2003). This is true whether a presumptive fee is being applied or not. *See, e.g., In re Yates,* 217 B.R. 296, 301 (Bankr. N.D.Okla.1998) ("The use of 'flat' or 'customary' fees [to be awarded without a detailed fee application] does not relieve the bankruptcy court of its statutory duty to review the fees incurred to determine their reasonableness.").

In this case, McCoy submitted his itemized Application in the dismissed 2003 case, seeking allowance of $2,027.00 in fees. The bankruptcy court disallowed the portion of requested fees exceeding the $800 presumptive fee because McCoy did not show "extraordinary circumstances" as required under the Chapter 13 Guidelines. Alternatively, the court concluded that the fees in excess of the $800 presumptive fee were not reasonable within the meaning of § 330.

■ Because the bankruptcy court applied § 330, the law undisputably applicable to the allowance of McCoy's fees, the only issue in this case is whether the bankruptcy court abused its discretion in disallowing a portion of McCoy's fees in the Debtors' dismissed 2003 case. "An abuse of discretion occurs when the [trial] court bases its ruling on an erroneous conclusion of law or relies on clearly erroneous fact findings," *Kiowa Indian Tribe v. Hoover,* 150 F.3d 1163, 1165 (10th Cir.1998), or " fails to consider . . . the facts upon which the exercise of its discretionary judgment is based." *Ohlander v. Larson,* 114 F.3d 1531, 1537 (10th Cir.1997). In this case, the bankruptcy court made no factual findings either on the record or in its Fee

Order in support of its decision to disallow a portion of the fees requested in McCoy's Application under § 330. *See* Fed. R.Civ.P. 52. Accordingly, we cannot conduct appellate review of the Fee Order.

■ Granted, the analysis under § 330 does not require a detailed review and discussion of the line by line entries. The court may make a subjective judgment based on the entire circumstances presented. *Mares v. Credit Bureau of Raton,* 801 F.2d 1197, 1203 (10th Cir.1986). However, in this case, the bankruptcy court did not provide any basis for this Court to determine whether the fee award was an abuse of discretion. When fees are sought that exceed the amount of a presumptively reasonable fee, those fees must be reviewed under § 330, regardless of the "extraordinary circumstances" standard contained in the bankruptcy court's Chapter 13 Guidelines.

McCoy argues that the bankruptcy court erred when it did not award him the full amount he requested because it impermissibly evaluated his Application under the "extraordinary circumstances" standard set in the Chapter 13 Guidelines, rather than § 330(a)(4)(B). We need not address this argument, because, as discussed above, the bankruptcy court alternatively disallowed fees in excess of the $800 presumptive fee under § 330.[2] The only error made by the bankruptcy court was its failure to provide findings of fact to allow review of its decision under § 330.

McCoy did not challenge the $800 presumptive fee in the bankruptcy court or in this Court. Accordingly, unlike the concurring Opinion, we refuse to address the appropriateness of the presumptive fee be-

---

**2.** *See, e.g., In re Keener,* 2004 WL 2255123, BAP No. WO–04–045 (10th Cir. BAP Sept. 20, 2004) (per curiam) (another panel of this Court refused to address McCoy's "extraordi-

nary circumstances" argument because the bankruptcy court had disallowed a portion of McCoy's fees under § 330).

cause there is no record or legal argument to review. *See, e.g.,* 19 James Wm. Moore, Moore's Fed. P. § 205.05[1] (LexisNexis 3rd ed.2003) (recognizing "long-standing rule" that a claim or issue must have been raised or passed on in trial court to be reviewable on appeal because it is "not a sensible exercise" to analyze an issue without the benefit of a full record) (quoting *United States v. Williams,* 504 U.S. 36, 41, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992); *Yee v. City of Escondido,* 503 U.S. 519, 538, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992)); *accord Lytle v. Household Mfg., Inc.,* 494 U.S. 545, 552 n. 3, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990).

## IV. *Conclusion*

For the reasons set forth above, we REVERSE the bankruptcy court's Fee Order, and REMAND for proceedings consistent with this Opinion.

McFEELEY, Chief Judge, Concurring in the Result.

While I concur in the result, I write separately because I disagree with the majority's analysis. The issue of whether the bankruptcy judge erred when he evaluated McCoy's fee application under the Chapter 13 Guidelines rather than 11 U.S.C. § 330 is squarely before us. For the reasons stated, I would reverse and remand on the grounds that the bankruptcy judge erred by applying the Chapter 13 Guidelines.

Section 330 of the Bankruptcy Code provides for "reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney ...." 11 U.S.C. § 330(a)(1)(A). When determining reasonable compensation, the bankruptcy court *"shall consider* the nature, the extent, and the value of such services ...." 11 U.S.C.

§ 330(a)(3)(A)(A) [1] (emphasis added). The statute further enumerates the following five nonexclusive factors that a court may consider in its determination of the nature, the extent, and the value of such services:

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time in which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A)(A)—(E). As articulated by a leading bankruptcy treatise, under § 330, the court has a duty to scrutinize the time records and evaluate the propriety of the compensation requested. 3 Collier on Bankruptcy ¶ 330.04[4][c] (Lawrence P. King, ed., 15th ed. rev.2003).

Section 330 further provides that certain services are not compensable. Specifically, a court may not allow compensation for the following:

(i) unnecessary duplication of services; or

(ii) services that were not-

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case.

11 U.S.C. § 330(a)(4)(A)(i)—(ii). However, there is one exception to the requirement expressed in this subsection that compen-

sation is allowable only for those services reasonable likely to benefit a debtor's estate. That exception is found in § 330(a)(4)(B), which provides for compensation for an attorney representing the interests of a Chapter 13 debtor. To attorneys representing Chapter 13 debtors, a court may award "reasonable compensation ... *based on consideration of the benefit and necessity of such services to the debtor* and the other factors set forth in this section." 11 U.S.C. § 330(a)(4)(B) (emphasis added).

To expedite the administration of fee applications under § 330, some districts have promulgated fee guidelines also known as "normal and customary fees" or presumptive fees. *See, e.g., In re Kindhart,* 167 F.3d 1158 (7th Cir.1999) (discussing presumptive fees in the Central District of Illinois); *In re Eliapo,* 298 B.R. 392, 400 (9th Cir. BAP 2003) (discussing presumptive fees as implemented in the Northern District of California). Such guidelines establish presumptive attorney's fees under § 330. The presumptive fees are awarded after a simple application unless an attorney chooses to submit an itemized application. If an attorney submits an itemized application, then the court evaluates the application according to the practice of the district in which the court sits.

On March 25, 2003, the bankruptcy judge adopted presumptive fees in local guidelines entitled Chapter 13 Guidelines for the United States Bankruptcy Court Western District of Oklahoma ("Guidelines"). The Guidelines took effect on April 1, 2003. With respect to Chapter 13 attorney fees, the Guidelines provide:

> The fees set forth below are presumed to be reasonable. However, in cases where an attorney believes extraordinary circumstances justify an award of additional fees, the attorney may submit a written fee application together with attorney time records complying with the requirements set forth in *In re Seneca Oil Co.,* 65 B.R. 902 (Bankr. W.D.Okla.1986). Such application will be set for hearing by the Court, and if granted, the manner of payment will be determined by the Court.

Chapter 13 Guidelines ¶ X.A.iii at 12, in Appellant's Appendix at 30. The Guidelines adopt the following attorney fees as presumptively reasonable fees for work performed in Chapter 13 cases: $1500 in a case in which an order of confirmation is entered; $800 in a case that is dismissed or converted to Chapter 7. Chapter 13 Guidelines ¶ X.B.i, X.D.i, at 13, 15, in Appellant's Appendix at 31.

The $1500 fee constitutes payment for fees and expenses for the following nonexclusive services:

> answering clients' general questions, reviewing notice of claims filed, reviewing annual reports in a business case, filing proofs of claims on behalf of creditors, objecting to proofs of claim, serving the plan or plan summary if necessary, attending all hearings, including the § 341 Meeting and Confirmation hearing, and serving the Order Confirming Plan.

Chapter 13 Guidelines ¶ X.B.iii, in Appellant's App. at 32. There is no similar paragraph describing the services for which the $800 is presumptively awarded to debtor's counsel when a case is not confirmed.

The Guidelines do not contain any information about the hourly rate or the number of hours upon which the $1500 or $800 fees are based. Additionally, the Guidelines are mandatory. Departure from the Guidelines is permitted only on a showing of "extraordinary circumstances."

Generally, local guidelines are promulgated by district courts and bankruptcy

courts as local rules under the terms of Federal Rule of Bankruptcy Procedure 9029(a) and Federal Rule of Civil Procedure 83. Pursuant to Rule 9029(a) a district court may adopt or delegate to bankruptcy courts the power to adopt local bankruptcy rules "governing practice and procedure in all cases and proceedings within the district court's bankruptcy jurisdiction which are consistent with—but not duplicative of—Acts of Congress and these rules ...." Fed. R. Bankr.P. 9029(a). The Guidelines were never officially adopted under the provisions of Rule 9029(a). In fact, it is unclear under which statutory authority these rules were adopted. However, because the Guidelines function as local rules, I will analyze them as such.

Local rules must be consistent with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. *Id.; In re Rivermeadows Associates, Ltd.*, 205 B.R. 264, 269 (10th Cir. BAP 1997). Local rules or guidelines must be limited to practice and procedure and " 'shall not abridge, enlarge, or modify any substantive right.' " *In re Wilkinson*, 923 F.2d 154, 155 (10th Cir. 1991) (quoting 28 U.S.C. § 2075).[2]

In this case, McCoy submitted an itemized "Application for Allowance of Compensation under 11 U.S.C. § 330" in the 2003 case in the amount of $2,027.00 ("Application"). The bankruptcy court disallowed the Application to the extent that it exceeded the amount set by the presumptive guidelines on the grounds that McCoy did not show the extraordinary circumstances necessary to depart from the Guidelines. On appeal, McCoy argues that the bankruptcy court erred in evaluating his Application because the bankruptcy court impermissibly assessed his Application under the Guidelines rather than § 330(a)(4)(B).[3] McCoy contends that the Guidelines rewrite § 330 because they allow a court to bypass the test within that statute when evaluating an attorney's fee application. On appeal, the issue before this court is whether the Guidelines abridge or modify substantive rights expressed in § 330.

A decision to allow or disallow compensation under § 330 is reviewed for abuse of discretion. *In re Commercial Fin. Servs., Inc.*, 298 B.R. 733, 747 (10th Cir. BAP

2. An argument may be made that the bankruptcy court established the Guidelines based on the equitable powers granted a bankruptcy judge under § 105(a). Under § 105(a) a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). The Supreme Court has stated that a bankruptcy court's equitable powers "must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). The Tenth Circuit has stated that a bankruptcy court's equitable powers " 'may not be exercised in a manner that is inconsistent with the other, more specific provisions of the [Bankruptcy] Code.' " *United States v. Richards (In re Richards)*, 994 F.2d 763, 765 (10th Cir.1993) (quoting *Landsing Diversified Prop.-II v. First Nat'l Bank and Trust Co. (In re W. Real Estate Fund, Inc.)*,

922 F.2d 592, 601 (10th Cir.1990)). Any guidelines implemented under § 105(a) would also be restricted so as not abridge, enlarge, or modify substantive rights conveyed in the Bankruptcy Code. An analysis of the Guidelines under § 105(a) would be similar to the one I engage in here.

3. The majority argues that because McCoy did not argue that the "extraordinary circumstances" element was contrary to § 330(a)(3)(A) in the hearing before the bankruptcy court, we do not have the jurisdiction to consider that issue here. I disagree. In his Application, McCoy asked for review under § 330 of the Bankruptcy Code. The extraordinary circumstances element does not appear in § 330. Furthermore, as I observe, our review of the legal analysis underpinning the bankruptcy court's fee award is de novo.

2003) (quoting *In re Miniscribe Corp.*, 309 F.3d 1234, 1244 (10th Cir.2002)). However, review of a fee award is a two-prong analysis. The legal analysis "underpinning the fee award" is an issue of law that is reviewed de novo, while the court's actual findings in assessing the fee award are reviewed under the clearly erroneous standard. *See Praseuth v. Rubbermaid, Inc.* 406 F.3d 1245, 1257 (10th Cir.2005) (stating "[w]hile the district court's legal analysis underpinning the fee award is reviewed de novo, we will reverse the district court's factual findings only if we have a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances."). Whether a local court rule is valid is a question of law, which an appellate court reviews de novo. *Rivermeadows*, 205 B.R. at 269.

McCoy focuses his appeal on an issue of law—he argues that the Guidelines abridge or modify the substantive rights granted by § 330. As an initial matter, I observe that the Tenth Circuit has determined that attorney's fees are a substantive right. *Prudential Ins. Co. of America v. Carlson*, 126 F.2d 607, 611 (10th Cir. 1942) (stating "[s]tatutes providing for attorneys' fees impose a liability which one may enforce as a matter of right. Such fees are put in controversy in the suit and are a part of the substantive right."); *cf. In re King Resources Co.*, 651 F.2d 1349, 1353 (10th Cir.1981) (finding that attorney's fees are substantive rights for diversity purposes); *see also Marek v. Chesny*, 473 U.S. 1, 35, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985) (Brennan, J. dissenting) (stating "The right to attorney's fees is 'substantive' under any definition of that term."). A right will be abridged when the local rule substantively alters the right itself. *Wilkinson*, 923 F.2d at 155. Therefore, the crux of this appeal is whether the Guidelines impermissibly alter the substantive right conveyed in § 330.

No Circuit has directly addressed the issue of whether local guidelines establishing flat fees alter the substantive rights established by § 330 and thereby exceed the parameters of Rule 9029.[4] The

---

4. The Sixth Circuit has rejected the use of normal and customary fees as had been established through caselaw. *In re Boddy*, 950 F.2d 334, 337–38 (6th Cir.1991). In *Boddy*, the Chapter 13 debtor applied for legal fees. *Id.* at 335. The Trustee recommended $500, which the bankruptcy court granted. *Id.* Later, the law firm sought an additional $1,156.00 as interim compensation and $31.93 for reimbursement of expenses. *Id.* The bankruptcy court awarded the law firm $300.00 in interim compensation and $31.93 for expenses. *Id.* In determining the amount of the compensation, the bankruptcy court relied on *In re Robinson*, No. 3–88–01023(1)(13), 1988 WL 252268 (Bankr. W.D.Ky. Sept. 2, 1988), which set $650.00 as the maximum normal and customary fee for a Chapter 13 case in the Western District of Kentucky. *Id.* The Sixth Circuit reversed, rejecting the use of presumptive fees. Relying on Supreme Court cases such as the *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 107 S.Ct. 3078, 97

L.Ed.2d 585 (1987), which adopts the lodestar method as the method by which federal courts should determine reasonable attorney's fees under federal statutes that provide for such fees, the Sixth Circuit determined that the lodestar method was the appropriate standard for determining attorney's fees under § 330. The lodestar method is calculated by "multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended." *Boddy*, 950 F.2d at 337. *Boddy* held that the bankruptcy court may consider "normal and customary" fees "as long as it expressly discusses these factors in light of the reasonable hours actually worked and a reasonable hourly rate." *Id.* at 338.

While not expressly overruling normal and customary fees, the Eighth Circuit has concluded that such fees may only be employed in Chapter 13 cases after a finding that a lodestar calculation is inappropriate under the circumstances. *In re Kula*, 213 B.R. 729, 737 (8th Cir. BAP 1997). In the absence of

Guidelines imposing the presumptive fees at issue here impermissibly alter the substantive rights delineated in § 330 for the following reasons: (1) the Guidelines permit an award of attorney's fees in the absence of the factual analysis mandated by § 330; (2) the Guidelines remove discretion from the bankruptcy court in the absence of "extraordinary circumstances," a standard that does not appear in § 330; (3) the Guidelines conflict with Federal Rule of Bankruptcy Procedure 2016; (4) the Guidelines are contrary to the policy behind § 330. I will address each issue in turn.

Through mandatory language, § 330(a)(3) requires a bankruptcy court to engage in a comprehensive review of each attorney's fee application. *In re Commercial Fin. Servs., Inc.* 298 B.R. 733, 747–48 (10th Cir. BAP 2003). Under the dictates of § 330(a)(3)(A), a bankruptcy court shall consider the "nature, the extent, and the value of such services" (hereinafter, "nature, extent and value test") when determining reasonable compensation. The nature, extent and value test is further defined by certain nonexclusive relevant factors that a court may consider including the "time spent," the "rates charged," the necessity or benefit of the services *at the time* they were performed, the reasonableness of the fee charged in view of the customary compensation, and whether the services were performed in a reasonable amount of time. 11 U.S.C. § 330(a)(3)(A)(A)-(E) (emphasis added). By its terms the nature, extent, and value test requires a particularized examination of each attorney's fee application. The Tenth Circuit has stated that in engaging in this examination, the lodestar test is the appropriate method of calculating reasonable compensation under § 330(a). *In re Miniscribe Corp.*, 309 F.3d 1234, 1243 (10th Cir.2002). The lodestar analysis begins with "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Conclusory statements on whether a fee is reasonable or unreasonable are not sufficient. *In re Cascade Oil Co., Inc.,* 126 B.R. 99, 107 (D.Kan.1991).

The Guidelines do not comport with these requirements. Under the Guidelines, an attorney will receive flat fees in the absence of any determination of reasonable compensation through the factual analysis required by § 330. The nature, extent and value test is ignored. The flat fee is remitted on simple application.[5] Furthermore, the Guidelines do not reveal the factual suppositions—specifically the number of hours or the hourly rate—upon which the attorney's fees are valued.[6] The

---

such a finding, the Eighth Circuit requires bankruptcy court to use a lodestar calculation in determining reasonable attorney's fees under § 330. *Id.; accord Stalnaker v. DLC, Ltd.,* 376 F.3d 819, 825 (8th Cir.2004).

In contrast, courts in both the Ninth and the Seventh Circuit have permitted presumptive fees. However, neither have examined whether specific local rules or guidelines have been enacted within the parameters of Rule 9029. *See In re Eliapo,* 298 B.R. 392, 400 (9th Cir. BAP 2003)(finding that presumptive fees do not violate the requirements of § 330 that attorney's fees should be reasonable as long as the "assigned values are the result of

a direct review of the marketplace"); *In re Kindhart,* 167 F.3d 1158, 1159–60 (7th Cir. 1999) (accepting a uniform presumptive fee for the Central District of Illinois Bankruptcy Court, which is reviewable every two years).

**5.** As further discussed *infra,* there is no requirement under the Guidelines that an attorney submit a detailed statement of the services rendered and the time expended as mandated by Federal Rule of Bankruptcy Procedure 2016.

**6.** The lack of factual information in the Guidelines makes the fees arbitrary. For ex-

lack of any factual basis for a fee award is directly contrary to the statute.[7]

More important, the Guidelines deviate from the substantive law delineated in § 330 in their imposition of the requirement that departure from its mandated flat fees are permitted only under "extraordinary circumstances." There is nothing in § 330 requiring a showing of extraordinary circumstances before an attorney can be paid for reasonable labor.[8] As has been observed, the statute requires that a court evaluate whether the services were reasonable at the time they were rendered. This is a discretionary determination made under the nature, extent and value test. In contrast, the "extraordinary circumstances" requirement substantively alters the statute by withdrawing all discretion from the bankruptcy court to decide "reasonable fees" in the absence of "extraordinary circumstances."[9] The requirement that an attorney show extraordinary circumstances to depart from the Guidelines ignores the statute and exceeds the scope of the court's power to fashion guidelines by requiring the court to measure the attorney's services against the Guidelines and not by the § 330 factors.

Additionally, the Guidelines impermissibly override the requirements of Federal Rule of Bankruptcy Procedure 2016. Rule 2016 provides:

"[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested."

Fed. R. Bankr.P.2016. In mandatory language, the rule commands each attorney to submit a detailed fee application. In contrast, under the Guidelines, an attorney must submit a detailed fee application only when the attorney plans to seek fees in

---

ample, under the Guidelines, there is a significant difference in the flat fee granted an attorney who provides services for a case that is confirmed as opposed to an attorney who provides services to a Chapter 13 debtor whose case that is dismissed or converted. Although an identical amount of work might have been performed in each instance, the Guidelines offer no justification for the different fees—an attorney is awarded a $1500 presumptive fee if a Chapter 13 case is confirmed and an $800 presumptive fee if it is not. Without an articulated basis for the discrepancy between the presumptive fees for confirmed cases versus dismissed or converted cases, the fees are arbitrary.

7. Moreover, under the Guidelines, the awarding of legal fees may result in a decision that has no factual basis. Here, McCoy was paid for the confirmed 2004 case. The fees for the unconfirmed 2003 case, the chronologically first case, were considered thereafter. Without pointing to any evidence in the application before the court and in the absence of the previous application, which was never offered into evidence, the bankruptcy court found that the 2003 case duplicated work in the later filed 2004 case and disallowed McCoy's application because it exceeded the $800 guideline.

8. It is hard to see how an attorney could make such a showing in the dearth of any information about how the presumptive fee was determined: How can one demonstrate what is extraordinary in the absence of any concrete information about what is ordinary?

9. In effect, the presumptive fee in the absence of extraordinary circumstances sets a cap on Chapter 13 attorneys' services. Under the Bankruptcy Code there is no limitation on the compensation of a Chapter 13 debtor's attorney other than the factors delineated in § 330(a)(3)(A). Clearly, if Congress wanted to create such a cap, it could have done so as it has on the compensation of trustees and professional persons employed by the trustee. *See* 11 U.S.C. § 326 (limitation on compensation of trustees); 11 U.S.C. § 328 (limitation on compensation of professional persons [employed by a trustee or a committee appointed under 11 U.S.C. § 1102]).

excess of the guideline fee. All local rules or guidelines must be *consistent* with the Bankruptcy Rules. Fed. R. Bankr.P. 9029; *Rivermeadows*, 205 B.R. at 269. The Guidelines are not.

Finally, I observe that the Guidelines are contrary to the policies behind § 330. In 1978, Congress amended § 330 to overrule case law that had assigned fees based primarily on a consideration of "economy of the estate." *In re Cascade Oil Company, Inc.*, 126 B.R. 99, 103–04 (D.Kan.1991). The policy behind the amendment was to ensure that bankruptcy attorneys would receive fees comparable with non-bankruptcy counsel. *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 849 (3d Cir. 1994) (stating "[t]he unambiguous policy inspiring § 330 ... is that professionals and paraprofessionals in should earn the same income as their non-bankruptcy counterparts"). The legislative history states:

> The compensation is to be reasonable, for actual necessary services rendered, based on the time, the nature, the extent, and the value of the services rendered, and on the cost of comparable services other than a case under the bankruptcy code. The effect of the last provision is to overrule *In re Beverly Crest Convalescent Hospital, Inc.*, 548 F.2d 817 (9th Cir.1976, as amended 1977), which set an arbitrary limit on fees payable, based on the amount of a district judge's salary, and other, similar cases that require fees to be determined based on notions of conservation of the

estate and economy of administration. If that case were allowed to stand, attorneys that could earn much higher incomes in other fields would leave the bankruptcy arena.

H.R.Rep. No. 95–595, at 329–30 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6286. As stated in the House report, § 330 was amended in part, to eliminate arbitrary limits on fees. Yet, the Guidelines impose an arbitrary limit on fees by setting a flat fee that cannot be exceeded in the absence of extraordinary circumstances.[10]

I conclude that the Guidelines abridge and modify substantive rights established by § 330 because they are inconsistent with the Bankruptcy Code and Rules. For these reasons, I would reverse and remand.

---

**10.** Moreover, the Guidelines, which are reviewed every four years, are unresponsive to changes in the market. *Compare In re Kindhart*, 160 F.3d 1176, 1178 (7th Cir.1998) (concluding that a bankruptcy court had abused its discretion when it awarded a $800 presumptive fee to a Chapter 13 debtor's attorney on the grounds that the fee was probably outmoded and arbitrary as it had not been reexamined in ten years and that all fees

should be fair and reasonable depending on the circumstances of the case) *with In re Kindhart*, 167 F.3d 1158 (7th Cir.1999) (appeal after remand) (finding that a general order that provided for a base fee level for Chapter 13 debtors' attorneys' fees of $1000 and further provided for further review of that base rate every twenty-four months was fair and reasonable).